# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### TAMPA DIVISION

RICHAR VALLECILLA-VELEZ,

Petitioner,

vs.

CASE NO. 8:08-cv-2406-T-27TBM
CRIM. CASE NO. 8:05-cr-365-T-27TBM

UNITED STATES OF AMERICA,

Respondent.

_____/

## ORDER

**BEFORE THE COURT** is Petitioner's Motion to Vacate, Set Aside or Correct Sentence Pursuant to 28 U.S.C. § 2255 (CV Dkt. 1) and the Government's Response (CV Dkt. 7). Upon consideration, Petitioner's motion is DENIED.

### Procedural Background

Petitioner was charged in a two-count superseding indictment with possessing with intent to distribute five kilograms or more of a mixture and substance containing a detectable amount of cocaine, in violation of 46 U.S.C. App. § 1903(a), and (g), 18 U.S.C. § 2, and 21 U.S.C. § 960(b)(1)(B)(ii) (count one) and conspiring to possess with intent to distribute five kilograms or more of a mixture or substance containing a detectable amount of cocaine while onboard a vessel subject to the jurisdiction of the United States, in violation of 46 U.S.C. App. §§ 1903(a), (g) and (j) and 21 U.S.C.§ 960(b)(1)(B)(ii) (count two) (CR Dkt. 107). On July 17, 2006, Petitioner pleaded guilty without a plea agreement and orally agreed to waive his right to

directly appeal or collaterally attack his convictions.[1] (CR Dkt. 306). On October 19, 2006,

Petitioner was sentenced to concurrent terms of two hundred thirty-five months imprisonment on

each count of conviction to be followed by five years of supervised release. (CR Dkt. 364).

Petitioner appealed his convictions and sentences. On November 15, 2007, the United States Court

of Appeals for the Eleventh Circuit rejected Petitioner's appeal (CR Dkt. 501). Petitioner did not

seek certiorari review in the United States Supreme Court.

---

[1] During the plea colloquy Petitioner averred:

| | |
|---|---|
| Court: | [I]n this case, the prosecutor has represented to me that [the Government] will consider - - the Government will consider filing a motion to reduce your sentence if you cooperate and provide what is known as substantial assistance. |
| | That offer is made conditioned on you waiving your right to seek and [sic] appeal from the higher court, as well as your right to attack your conviction collaterally through [a] writ of habeas corpus on any ground, including the ground of ineffective assistance of counsel. Do you understand that offer representation from the Government? |
| Defendant: | Yes, sir. |
| Court: | Do you understand that it is entirely the decision of the Government whether or not to file a motion to reduce your sentence and neither your attorney nor the judge can require the Government to file such a motion? |
| Defendant: | Yes, sir. |
| Court: | With all of that in mind, do you waive or give up your right to appeal to a higher court the sentence I impose, your conviction, and do you waive and give up your right to attack your sentence and conviction by collateral means, that is, a petition for habeas corpus on any ground, including the ground of ineffective assistance of counsel? |
| Defendant: | Yes, sir. |

(CR Dkt. 458, pp. 93-94).

Petitioner signed his Section 2255 motion on November 12, 2008, and the court received the motion on December 1, 2008 (CR Dkt. 507; CV Dkt. 1). The Respondent makes no challenge to the timeliness of the motion. Petitioner raises four grounds for relief:

**Ground One:** Ineffective assistance of counsel for failing to discuss the Presentence Investigation Report with Petitioner;

**Ground Two:** Ineffective assistance of counsel for allowing the Petitioner to testify at the sentencing hearing;

**Ground Three:** Ineffective assistance of counsel for failing to either demand that Petitioner proceed to trial or have Petitioner plead guilty at the earliest possible time; and

**Ground Four:** Ineffective assistance of counsel for failing to assure Petitioner's eligibility for a safety valve reduction at sentencing

### Facts[2]

Between August 14, 2005, and August 18, 2005, U.S. maritime patrol aircrafts (MPAs) observed the Colombian registered fishing vessel RIO MAR I traveling in international waters. The RIO MAR I was traveling on an essentially westerly course in the Eastern Pacific Ocean along a known drug trafficking route between Colombia and Mexico. The MPAs collected and recorded digital imagery which showed that the RIO MAR I had a wire towing harness and chafing gear affixed to its stern. The MPA photos showed that the wire harness was thick and extended into the water from the stern of the RIO MAR I. The cable appeared taught [sic] and under strain and appeared to have no known fishing-related purpose for that type of vessel. The vessel exhibited characteristics, including a labored wake, consistent with towing an object.

After U[nited] S[tates] C[oast] G[uard] aircraft flew over the RIO MAR I, the vessel was observed on radar to take a sudden and dramatic northerly turn from the prevailing westerly course that the RIO MAR I had been on for at least the previous five days.

On August 19, 2005, members of the USCG deployed on the naval ship USS JARRETT intercepted the RIO MAR I approximately 90 nautical miles southwest

---

[2] The factual summary derives from the Presentence Investigation Report to which Petitioner made no objection to the summary of offense conduct.

3

of the Galapagos Islands. The crew members aboard the RIO MAR I were Sergio Portocarrero-Reina, Ulpiano Mina, Benito Murillo-Cuero, Teofilo Renteria-Bravo, Leonardo Anchico-Jiminez, Virgilio Caicedo, Jose Carlos Belalcazar-Vallecilla, and Richar Vallecilla-Velez. Once aboard the RIO MAR I, the USCG boarding team was unable to locate the wire towing harness which had been previously photographed by the MPAs. The boarding team did not locate any fish or bait on board the vessel.

During the USCG boarding of the RIO MAR I, Sergio Portocarrero-Reina identified himself as the captain of the vessel. Portocarrero-Reina also stated the nationality of the vessel and crew and he specified the roles of the crew members to include information concerning their previous voyages together. Upon boarding the RIO MAR I, USCG members secured the eight crew members on the bow of the vessel while a safety inspection of the vessel was conducted. The crew members were then transferred to the main berthing area of the vessel for the duration of the boarding.

Approximately 12 hours after the initial boarding, a USCG helicopter from the USS JARRETT spotted a semi-submersible vessel (sub) approximately 11 nautical miles from where the RIO MAR I was initially boarded. USCG members located the semi-submersible sub approximately 15 miles from the boarding location. The sub was located in a position which correlated with the RIO MAR I's track line, adjusted for known drift rates in the area. The sub was constructed of steel and measured approximately 31 feet in length and four feet in diameter. According to the government, the submersible was designed to submerge when towed at a depth which would not be visible from the air and to surface when no longer being pulled by a vessel. Attached to the sub was approximately 400 feet of wire cable and chafing gear. The chafing gear on the sub was forensically determined to have once been connected to a piece of chafing gear found on the RIO MAR I. The sub contained approximately 5,500 pounds of cocaine. According to the government, the cocaine found onboard the submersible had a wholesale value of over 30 million dollars.

The results of the interdiction were reported to the Colombian government. The government of Colombia consented to the enforcement of United States law by the United States over the defendants' vessel, including its cargo and any persons onboard.

. . .

Richar Vallecilla-Velez participated as [a] crewman aboard the RIO MAR I.

4

## Discussion

Petitioner's oral appeal waiver bars each of the ineffective assistance claims raised in the instant motion. Petitioner neither argues that he unknowingly or involuntarily agreed to the waiver nor otherwise challenges its validity.[3] Notwithstanding the waiver, the claims lack merit and warrant no relief.

## Ground One

Petitioner alleges that his trial counsel rendered ineffective assistance by failing to read or discuss with Petitioner the Presentence Investigation Report ("PSR") before sentencing, "leaving [Petitioner] completely ignorant of the recommended sentencing." He argues in his supporting memorandum (CV Dkt. 8) that he "was completely unaware of the length of the sentence that probation was recommending" and that counsel "did not discuss the dangers of not accepting responsibility for his crime," "never conferred with [Petitioner] regarding the safety valve statutes . . . or how [Petitioner] might help himself if he fully cooperated with the government," and

---

[3] After conducting a full colloquy, the court determined that Petitioner entered a knowing and voluntary plea:

It is the finding of the court with respect to this defendant that he is fully competent and capable of entering an informed plea, that he is aware of the nature of the charges and the consequences of the plea, and that his guilty pleas have been made knowingly and voluntarily, that they are supported by an independent basis in fact containing each of the essential elements of the offense[s], that he has also waived his right to appeal, including the right to seek collateral review on any ground, including ineffective assistance of counsel in exchange for the government's consideration to file a motion for reduction of his sentence based upon his cooperation and assistance; and that it is the exclusive decision of the United States in determining whether or not such a motion will be filed, that is, whether or not his assistance rises to the level of substantial assistance.

I will, accordingly, accept his guilty pleas and adjudicate him guilty of the offenses charged in Counts One and Two of the superseding indictment.

Let me also make a finding that these guilty pleas are not only supported by an independent basis in fact containing each of the essential elements of the offenses charged, but as to each defendant, the quantity of cocaine has been admitted.

(CR Dkt. 458, pp.118-19).

"never explained the benefits of a 5K1 departure." Petitioner further claims that counsel "refused to allow him to be interviewed by probation and told [Petitioner] that he (counsel) would provide the information that probation needed."

*Strickland v. Washington*, 466 U.S. 668 (1984), governs an ineffective assistance of counsel claim:

> The law regarding ineffective assistance of counsel claims is well settled and well documented. In *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), the Supreme Court set forth a two-part test for analyzing ineffective assistance of counsel claims. According to *Strickland*, first, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. *Strickland*, 466 U.S. at 687, 104 S.Ct. 2052.

*Sims v. Singletary*, 155 F.3d 1297, 1305 (11th Cir. 1998).

*Strickland* requires proof of both deficient performance and consequent prejudice. *Strickland v. Washington*, 466 U.S. at 697 ("There is no reason for a court deciding an ineffective assistance claim . . . to address both components of the inquiry if the defendant makes an insufficient showing on one."); *Sims v. Singletary*, 155 F.3d at 1305 ("When applying *Strickland*, we are free to dispose of ineffectiveness claims on either of its two grounds."). "[C]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Strickland v. Washington*, 466 U.S. at 690. "[A] court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." *Strickland v. Washington*, 466 U.S. at 690. *Strickland* requires that "in light of all the circumstances, the identified acts or omissions

6

were outside the wide range of professionally competent assistance." *Strickland v. Washington*, 466 U.S. at 690.

Because "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment," Petitioner must demonstrate that counsel's error prejudiced the defense. *Strickland v. Washington*, 466 U.S. at 691-92. To meet this burden, Petitioner must show a reasonable probability that, but for counsel's unprofessional errors, he would not have pleaded guilty and would have insisted on proceeding to trial. *Hill v. Lockhart*, 474 U.S. 59 (1985). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland v. Washington*, 466 U.S. at 694.

*Strickland* cautions that "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation." *Strickland v. Washington*, 466 U.S. at 690-91. Petitioner cannot meet his burden merely by showing that the avenue chosen by counsel proved unsuccessful:

> The test has nothing to do with what the best lawyers would have done. Nor is the test even what most good lawyers would have done. We ask only whether some reasonable lawyer at the trial could have acted, in the circumstances, as defense counsel acted at trial. . . . We are not interested in grading lawyers' performances; we are interested in whether the adversarial process at trial, in fact, worked adequately.

*White v. Singletary*, 972 F.2d 1218, 1220-21 (11th Cir. 1992). *Accord Chandler v. United States*, 218 F.3d 1305, 1313 (11th Cir. 2000) ("To state the obvious: the trial lawyers, in every case, could have done something more or something different. So, omissions are inevitable. . . . [T]he issue is not what is possible or 'what is prudent or appropriate, but only what is constitutionally

compelled.'") (*en banc*) (*quoting Burger v. Kemp*, 483 U.S. 776, 794 (1987)). *See also Jones v. Barnes*, 463 U.S. 745, 751 (1983) (counsel has no duty to raise frivolous claims).

Petitioner presents no evidentiary support for this claim. The Government attached to its response a copy of a letter from trial counsel (CV Dkt. 7, Attach. 3) to the United States Probation Office regarding Petitioner's PSR indicating that counsel met with Petitioner to discuss the PSR on at least one occasion.[4] Petitioner fails to acknowledge or challenge this evidence. Notwithstanding, and even assuming, *arguendo*, that counsel performed deficiently, Petitioner cannot establish prejudice sufficient to sustain an ineffective assistance claim. He does not allege that the PSR contained any incorrect or false information and does not allege any objections that he would have either presented himself or asked counsel to present to the sentencing court on his behalf. Petitioner likewise makes no allegation that if counsel had shown him the PSR earlier or discussed it more thoroughly with him he would have received a different sentence. Absent a demonstration of prejudice, Petitioner cannot prevail on this claim of ineffective assistance of counsel. *See Strickland v. Washington*, 466 U.S. at 691-92.

**Ground Two**

Petitioner alleges that his trial counsel rendered ineffective by allowing Petitioner to testify at the sentencing hearing resulting in Petitioner losing a two-level reduction in his sentencing calculation for acceptance of responsibility. Petitioner further argues that counsel erroneously

---

[4] The letter reads in relevant part:

On Friday, September 29, 2006, I again had the opportunity to meet with my client. *We reviewed the draft presentence report* and I would like to make the following additional requests for amendments to the draft report. Accordingly, this letter supplements my letter to you dated September 21, 2006.

(CV Dkt. 7, Attach. 3, p. 1) (emphasis added).

informed the sentencing court that he had advised Petitioner not to testify and "repeatedly told the court that he had attempted to convince [Petitioner] not to plead guilty when in fact he had done just the opposite."

During the sentencing hearing the court permitted Petitioner to take the stand:

| | |
|---|---|
| Court: | I have a presentence report that I have reviewed, prepared by the United States Probation Office. This defendant . . . entered guilty pleas to counts one and two of the superseding indictment charging him with possession with intent to distribute five or more kilograms of cocaine while onboard a vessel subject to the jurisdiction of the United States and conspiracy to possess that cocaine. |
| | Subject to the argument we're about to hear, we have an advisory guideline range based on a criminal history category of Roman numeral I, offense level of 36 of 188 to 235 months, five years of supervised release as to both counts, a fine range of $20,000 to $8 million and a $200 special assessment. |
| | [Counsel], your argument on mitigating role. |
| [Counsel]: | Judge, if I could ask the court for some clarification. Is it the court's ruling in this case that the amount of cocaine that is attributable to these clients found in the submersible for the Rio Mar is sufficient under *DeVaron* to preclude them from receiving a minor role? If so, I'm not going to argue it. I'm going to go somewhere else. That's - - |
| Court: | It can be a determinative issue under *DeVaron*; do you agree? |
| [Counsel]: | Yes, most definitely. |
| Court: | I will say it is not the determinative issue, but it can be. I will consider all of the circumstances. |
| [Counsel]: | All right. |

9

| Court: | Including but not limited to the quantity. I simply recognize under the case law as [the prosecutor] has correctly observed, when you have quantities of this nature, the cases are fairly uniform in recognizing that that's enough in and of itself. |
|---|---|
| | So I would encourage you to make whatever other argument you have, as I want to consider all these matters, even though there may or may not be a mitigating role adjustment. It could very well affect the ultimate sentence. |
| [Counsel]: | All right. Then I'll accept the presentence report and - - that we're talking about the universe of responsibility for my client to be held accountable for to be simply the amount seized from the submersible being towed by the Rio Mar. And I'm going to ask that the court have my client uncuffed and on the witness stand. |
| Court: | Well, he can testify from where he is. I'm not going to interfere with the Marshal's witness, he can stand and be sworn exactly where he is now. Go ahead. |

DEFENDANT RICHARD [SIC] VALLECILLA-VELEZ SWORN.

(CR Dkt. 456, pp. 70-71). Petitioner was then examined by counsel about his activities aboard the boat and Petitioner testified that he was neither the captain, the engineer, nor the drug representative. (CR Dkt. 456, pp. 72-75). On cross-examination (CR Dkt. 456, pp. 75-93) Petitioner repeatedly denied knowing that the boat was towing the submersible containing the cocaine and denied his involvement in any illegal activity aboard the boat, disavowing his sworn statements during the change of plea hearing (CR Dkt. 458, p. 118) in which he admitted his guilt of the charged offenses. Following Petitioner's testimony, counsel moved to amend the PSR and requested that Petitioner be eligible for the safety valve reduction. After hearing argument from both counsel and the Government and reviewing the transcript of the plea colloquy, the court determined:

Court:        All right. We're reconvened in United States versus
              Vallecilla-Velez. I have before me a transcript of the
              plea proceeding I conducted on July 17th of 2006.

              During that change of plea proceeding, the
              government summarized, beginning at page 112 of
              this transcript - - summarized at great length
              beginning at page 112, the facts which it believed it
              could establish beyond a reasonable doubt satisfying
              all of the elements of the offenses charged in the
              superseding indictment.

              Specifically, on page - - beginning at page 113, the
              government outlined what had been observed on the
              Rio Mar, what had been located in the submersible.
              And I'll read a statement from [the prosecutor]
              alluding to witnesses who had testified that, between
              on or about August 14th of 2005 and August 18th of
              2005, while conducting surveillance, members of the
              United States Maritime Patrol on their aircrafts
              observed the Rio Mar as it, quote, transited a known
              drug smuggling route with a wire towing harness and
              chafing gear affixed to a stern, closed quote.

              They located the sub about 12 hours later after
              interdicting the Rio Mar. The sub contained
              approximately 5500 pounds of cocaine, had attached
              to its nose cone approximately 400 feet of wire cable
              and chafing gear which had been photographed.

              I then inquired of the defendant, beginning at page
              136, if he understood the nature of the charges,
              etcetera, the Rule 11 colloquy. And importantly for
              purposes of this proceeding, I asked him, do you also
              admit and agree to the facts as summarized by the
              prosecutor in support of the charges in the
              superseding indictment.

              His response was, "My god and I know so, yes."

              My question to him, quote, you are admitting to those
              facts, sir?, closed quote.

11

|  |  |
|---|---|
|  | The defendant responded, "Yes, sir." He was under oath at the time. He admitted and accepted these facts, [counsel]. How in the world can you justify making the statement you made to me earlier that he did not? |
| [Counsel]: | Because he's from Colombia. Because he's trying to understand the American criminal justice system with a third grade education from Colombia. And because I spent a number - - innumerable time with him in jail trying to figure out a way that we could plea before this court because that's what he wanted to do. |
| Court: | Are you suggesting that your client lied to me during the plea colloquy? |
| [Counsel]: | No, sir, not at all. I'm suggesting the only way that he could plea before this court was under the theory of willful blindness. And it is my understanding that's what he did. |
|  | He accepted the facts as presented by the government, not because he knew them to be true, but because he knew that he should have known of what they were going [sic] on that particular time. |
|  | Judge, you remember the difficulties in these pleas. You remember the sidebars. You remember me standing up and objecting during my client's plea. That is what he did - - that was the theory, the only theory that I, as an officer of the court, could let him plea. |
|  | And that's what he did. And now he stands before the court telling you that he played a minimal role in the offense. The two are not inconsistent and I would ask the court to so find. |
| Court: | I don't know about you making an objection. I asked specifically at page 142, "[Counsel], any objections or additional colloquy?" Your response, "No, Your Honor. But I would like to put on the record that the |

decision of my client to plead guilty . . ." And you were asked to get to the microphone.

You say, "No, Your Honor, to your question. But I want to put on the record that my client's decision to plead guilty was made contrary to his [sic] advice of counsel."

[Counsel]:    That's true.

Court:    I then conferred with Mr. - - me, the court, then again, directed my inquiry to Mr. Vallecilla-Velez, and he confirmed that it was his decision to make that plea, that he still intended to stand by his guilty plea.

[Counsel]:    Okay.

Court:    It's disingenuous to tell me at this time in this proceeding after your client admitted under oath to the facts summarized by the government that he didn't admit to conspiring and possessing the cocaine.

There's no factual basis in the record to support that statement. There's no statement in that plea colloquy to that effect.

Now, I think you owe this court and the prosecutor an explanation.

[Counsel]:    All right. What would you have me explain?

Court:    Don't ask me questions, [counsel]. You made the statements. And if I appear irritated, I am. As an officer of the court, you shouldn't be making statements without any foundation, putting your client at odds to a [sic] sworn testimony.

He is facing an obstruction of justice enhancement right now because I think he flat lied to the court a little while earlier. And your statements to the court don't help his cause.

So what's your explanation? There's nothing in that colloquy about anything other than an admission under oath to the conduct summarized by the prosecutor. There's no qualification.

It may have been against your advice. You made that point on the record and that's fair. I think you had a responsibility to yourself to make that statement.

But to say here today that the only reason he could make that plea was some - - I'll call it a theory, I don't mean to be critical - - but a theory that is inconsistent with his sworn testimony, it's belied by the record.

[Counsel]:    Understood. If the record is just simply what's before the court and during the plea colloquy. What the court does not have the advantage of is the amount of time that I've spent with him discussing this case at length and as to the theory and the only theory at which I believed he could plead guilty.

And it was my understanding after the plea colloquy that that's what he had done, was plead pursuant to the legal willful blindness. And that's why I stand before this court with no apologies whatsoever and tell you that that's what happened.

And that's why I think he does not deserve to lose his acceptance and that he's told you now what he's told me throughout, and that is he played a very minimal role on this drug run.

Court:    You and I know and, Mr. Vallecilla-Velez, you are now told, that when you testify before a judge under oath, whether it be during your change of plea colloquy or today, you are duty-bound to tell the truth. You will be held to those statements. The case law is very clear that a defendant will not be allowed to disavow sworn statements made under oath.

This court relied on his statements. The government relied on his statements. There was no indication or representation in any manner since or away that that

14

was anything other than an unqualified admission of guilt as to the offenses charged in the superseding indictment.

I have had cases - - in fact, [another attorney] had a client in the past who entered a guilty plea on the theory that you are now, for the first time, suggesting, [counsel]. I would suggest to you, sir, that at the plea colloquy is the time to make that type of presentation so that I can then explore with the defendant whether he is making a knowing and voluntary guilty plea.

At the time of sentencing, it's too late. I have, as well as everyone else in this room, relied on his statement under oath.

. . .

The request for a mitigating role adjustment under the advisory guidelines under 3B1.2 is denied. Under *DeVaron*, this defendant is being held accountable for only the conduct in which he engaged; no more, no less.

He has not established that his conduct was less culpable than most of the other participants in this case. He is not entitled to any mitigating role adjustment, either minimal or minor. His conduct here today, his testimony under oath, is conduct inconsistent with acceptance of responsibility.

. . .

Well, I'm not going to enhance for obstruction. I, too, believe this defendant was untruthful today. At a minimum, that testimony was inconsistent with acceptance of responsibility. Accordingly, I will not award him with those two points, notwithstanding his guilty plea.

I reiterate once again that he made a knowing and voluntary guilty plea, as far as I'm concerned, based upon the sworn statements he made in response to the

court's colloquy when he entered his guilty plea. And he will not be heard to now qualify those statements under oath.

Counsel, we need to turn back then to page 5 of the presentence report. Add those two points back in to arrive at an offense level of 38, criminal history category I, that provides for range of imprisonment of 235 months to 293 months.

Supervised release is five years as to each count. Fine range . . . [is] $25,000 to $8 million. And there's a $200 special assessment.

Are there any other objections to the advisory guidelines or the content of the presentence report? [Counsel]?

[Counsel]: No, Your Honor.

(CR Dkt. 456, pp. 102-11). After further argument by counsel, the court imposed sentence:

[C]ounsel alluded earlier to some of the cultural issues that inevitably arise on these cases. I listened very, very closely to the testimony of the defendant earlier, particularly on guard to any possibility that there was communication difficulty. There was, of course, in some respects to some of the terminology, as the interpreters had to seek some guidance.

But it was apparent to me that this defendant, for whatever reason, while under oath, made statements and testified in a manner that is nothing short of incredible. I find he was untruthful. And I chose not to entertain an obstruction of justice enhancement because that would do nothing more than prolong these proceedings.

By taking away acceptance of responsibility, he has - - at least the advisory guidelines have been adjusted to reflect his conduct sufficiently in my mind. This is not a time to be vindictive.

Mr. Vallecilla-Velez is a human being. He has a nice-looking family; I'm looking at them as I speak. He, like many of the other defendants, come[s] from an impoverished background. There is no suggestion that he has engaged in [a] similar type of trip[], that is, cocaine trafficking.

16

I am pausing, Mr. Vallecilla-Velez, because I'm still determining the appropriate sentence in your case. I am intimately familiar with the facts in this case, having presided over prolonged evidentiary proceedings tantamount to the presentation of evidence I would have seen in front of a jury.[5]

Photographic evidence, video evidence, testimony from officers who surveilled the Rio Mar, interdicted and boarded the Rio Mar, those who attempted to recover the submersible, those who actually entered the submersible and removed the cocaine, photographing its sophisticated radio and communication devices.

[The prosecutor] is correct. The helicopter pilot testified that he estimated that after putting 22,000 pounds [of] thrust, engaging that much thrust, he could not move this submersible, partly because of the wings which extended horizontally, but the weight was well over 10,000 pounds of just submersible.

It had 5500 pounds of cocaine onboard. The Rio Mar was surveilled straining as it towed the submersible. The chafing gear and the harness and the wiring was all photographed and exposed to the surveilling pilots.

No one onboard that vessel could have been onboard without knowing full well that that vessel was trailing a submersible of that size and that weight. It defies any sense of logic for the defendant to have testified in the manner in which he did. I surely could understand a defendant minimizing his participation, but not one who blatantly disavows what occurred.

Accordingly, having considered the advisory guideline range, all of the sentencing criteria as enumerated in Section 3553(a) of Title 18, including but not limited to the seriousness of the offense, the need to deter others, the need to protect the public against any offenses that may be perpetrated by this defendant, the circumstances of the offense, and this defendant's background and characteristics, it is the judgment of the court pursuant to the Sentencing Reform Act of 1984, that the defendant be committed to the custody of the Bureau of Prisons for a term of 235 months.

That term is imposed as to both Counts One and Two, concurrent. After which he will serve a five-year period of supervised release as to each count, again, concurrent, subject to the standard terms and conditions adopted by the court in this district. A special condition being that if he is deported, he shall not re-enter the United States without the express permission of the United States government.

---

[5] The court conducted numerous pretrial hearings during the months before Petitioner and his co-defendants elected to enter their pleas (CR Dkts. 180, 190, 196, 213, 215, 223, 274).

> This is a qualifying felony. Accordingly, he will cooperate in the collection of DNA as directed by his probation officer. I will impose the mandatory drug testing requirements of the Violent Crime Control Act, authorizing random drug testing not to exceed 104 tests per year.
>
> I will waive a fine, but order that he pay a $200 special assessment, which is payable to the United States and due immediately, $100 per count.

(CR Dkt. 456, pp. 113-17).

Petitioner faults counsel for "allowing" Petitioner to take the stand at sentencing. Nothing in the record shows either that counsel forced Petitioner to testify at sentencing or that the decision to do so was anyone's other than Petitioner's. Petitioner faults counsel for attempting to argue the theory of willful blindness and attempting to garner a safety valve reduction for Petitioner based on his testimony at the sentencing hearing. While it is true that these arguments were rejected by the court, Petitioner cannot establish that counsel performed deficiently by attempting to advance these arguments in light of Petitioner's statements at sentencing. Petitioner must overcome the presumption that the challenged conduct of his counsel was a matter of strategy. *Strickland v. Washington*, 466 U.S. at 689. "Even if many reasonable lawyers would not have done as defense counsel did at trial, no relief can be granted on ineffectiveness grounds unless it is shown that no reasonable lawyer, in the circumstances, would have done so." *Rogers v. Zant*, 13 F.3d 384, 386 (11th Cir. 1994). Trial counsel must decide which strategic and tactical option to pursue. *See e.g., Dingle v. Sec'y, Dep't of Corr.*, 480 F.3d 1092, 1099 (11th Cir. 2007) ("Even if counsel's decision . . . appears to have been unwise in retrospect, the decision will be held to have been ineffective assistance only if it was 'so patently unreasonable that no competent attorney would have chosen it.'") (*quoting Adams v. Wainwright*, 709 F.2d 1443, 1445 (11th Cir. 1983) and *Waters v. Thomas*, 46 F.3d 1506, 1512 (11th Cir. 1995) (*en banc*)).

Petitioner cannot fault counsel for his own untruthful testimony. Petitioner does not claim that counsel directed him to testify falsely or to disavow his sworn statements made during the change of plea hearing. Petitioner took an oath to tell the truth both before testifying at the change of plea hearing and before testifying at the sentencing hearing. Petitioner knew that he admitted his guilt to the charged offenses at the change of plea hearing. The consequences resulting from Petitioner's decision at the sentencing hearing to contradict those statements and deny his involvement in the offenses rest plainly with him. Petitioner fails to show that counsel, by "allowing" Petitioner to testify at sentencing, made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Absent a showing of deficient performance, Petitioner cannot prevail on this claim of ineffective assistance. *See Strickland v. Washington*, 466 U.S. at 697 ("There is no reason for a court deciding an ineffective assistance claim . . . to address both components of the inquiry if the defendant makes an insufficient showing on one."); *Sims v. Singletary*, 155 F.3d at 1305 ("When applying *Strickland*, we are free to dispose of ineffectiveness claims on either of its two grounds.").

**Ground Three**

Petitioner alleges that his trial counsel rendered ineffective by failing to have either demanded that Petitioner proceed to trial or have had Petitioner "plead guilty at the earliest possible time" and debrief law enforcement so that Petitioner could have received "any sentence reducing recommendation the government would or could have provided long before sentencing." He argues that counsel "apparently let his client choose the legal path which cost [Petitioner] any chance of receiving a minor role reduction," and that counsel's decision to label Petitioner's sentencing testimony as "debriefing" was "inexcusable."

19

Contrary to Petitioner's contention, counsel could neither have forced Petitioner to proceed to trial or forced him to enter a plea at a particular time. *See Jones v. Barnes*, 463 U.S. at 751 ("[T]he accused has the ultimate authority to make certain fundamental decisions regarding the case, as to whether to plead guilty, waive a jury, testify in his or her own behalf, or take an appeal."); *Stano v. Dugger*, 921 F.2d 1125, 1147 (11th Cir. 1991) ("The defendant remains the master of his case, particularly with respect to the entry of a guilty plea."). During the plea colloquy Petitioner averred that he was satisfied with counsel's representation, that he waived his right to a trial, and that no one had forced or coerced him into pleading guilty:

| | |
|---|---|
| Court: | Have you reviewed the charges in the indictment with your attorney through the assistance of an interpreter? |
| Defendant: | Yes, sir. |
| Court: | Are you fully satisfied with the counsel, representation and advice provided to you by your attorney? |
| Defendant: | Yes, sir. |

. . .

| | |
|---|---|
| Court: | Has anyone attempted in any way to force you to plead guilty, that is, has anyone threatened you or coerced you in any way to plead guilty? |
| Defendant: | No, sir. |
| Court: | If you plead guilty here this morning, is that because of your own free will and because you are, in fact, guilty? |
| Defendant: | Yes, sir. |

. . .

| | |
|---|---|
| Court: | Of course, if you plead guilty, you give up your right to a jury trial. Do you understand that? |
| Defendant: | Yes, sir. |
| Court: | And there are constitutional rights you will be giving up. I'm going to go through each of them with you. |
| | First of all, in addition to the right to a jury trial, you would have the right to be presumed innocent and the right to have the government prove your guilt beyond a reasonable doubt; the right to the assistance of counsel in defending yourself; the right to confront and cross examine each of the government's witnesses; the right to compel witnesses on your behalf to testify; the right to testify on your behalf; and the right not to testify. |
| | And if you chose not to testify, the court would instruct the jury that it could not consider your decision in any way in deciding whether or not the government has proven your guilt beyond a reasonable doubt. |
| | Do you understand that if you plead guilty this morning, you will waive all of those rights and there will be no trial? |
| Defendant: | Yes, sir. |

(CR Dkt. 458, pp. 89-90, 94-95). Moreover, counsel advised the court at the conclusion of the plea

hearing that Petitioner entered his plea against counsel's advice:

| | |
|---|---|
| Court: | [Counsel], any objection or additional colloquy? |
| [Counsel]: | No, Your Honor. But I would like to put on the record that the decision of my client to plead guilty - - |
| Clerk: | [Counsel], you need to get a microphone. |

| [Counsel]: | No, Your Honor, to your question. But I want to put on the record that my client's decision to plead guilty was made contrary to his [sic] advice of counsel. |
|---|---|
| Court: | Mr. Vallecilla-Velez, do you understand that the decision to plead guilty in this case, as you have done, is your decision, not your lawyer's? |
| Defendant: | Yes, sir. |
| Court: | And he has provided you with his best advice; correct? |
| Defendant: | Yes, sir. |
| Court: | And you still intend to stand on your guilty plea; correct? |
| Defendant: | Yes, sir. |

(CR Dkt. 458, pp. 122-23).[6]

"[T]he representations of the defendant [at a Rule 11 plea hearing], as well as any findings made by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral proceedings. Solemn declarations in open court carry a strong presumption of verity." *Blackledge v. Allison*, 431 U.S. 63, 73-74 (1977). Such representations are presumptively trustworthy and considered conclusive absent compelling evidence to the contrary. Petitioner neither produces evidence to challenge the veracity of his sworn statements at the plea colloquy nor alleges that he did not wish to enter his plea. Petitioner makes no challenge to the validity of his plea and does not claim that absent counsel's allegedly erroneous actions, he would have insisted on proceeding to trial rather than plead guilty. Petitioner further fails to present any factual or legal support for his

---

[6] Counsel reiterated in Petitioner's post-sentencing motion to reconsider sentence and judgment (CR Dkt. 373) his contention that Petitioner elected to enter a plea against counsel's advice. The court rejected the motion (CR Dkt. 394).

allegations and thus presents no evidence of entitlement to relief.[7]  *See Hill v. Lockhart*, 474 U.S.

52 (1985) (conclusory allegations of ineffective assistance of counsel are insufficient to raise a

constitutional issue); *Tejada v. Dugger*, 941 F.2d 1551, 1559 (11th Cir. 1991) (vague, conclusory,

or unsupported allegations cannot support an ineffective assistance of counsel claim).  Petitioner's

failure to meet either *Strickland*'s deficient performance requirement or prejudice requirement to

support this claim of ineffective assistance precludes relief.  *See Strickland v. Washington*, 466 U.S.

at 691-92.

**Ground Four**

Petitioner alleges that his trial counsel rendered ineffective assistance by failing to assure

Petitioner's eligibility for a safety valve reduction.  This claim lacks merit.

To be eligible for a safety valve reduction, a defendant must satisfy certain requirements,

including that, "not later than the time of sentencing hearing, the defendant truthfully provide[] to

the Government all information and evidence the defendant has concerning the offense or offenses

that were part of the same course of conduct or of a common scheme or plan[.]"  18

U.S.S.G. § 3553(f)(5).  *See also* U.S.S.G. § 5C1.2(5).  This disclosure provision "is a 'tell-all'

provision."  *United States v. Yate*, 176 F.3d 1309, 1310 (11th Cir. 1999).  A defendant seeking a

safety valve reduction bears the burden of proving entitlement to such reduction by a preponderance

of the evidence.  *United States v. Cruz*, 106 F.3d 1553, 1557 (11th Cir. 1997).  "In meeting this

burden, '[t]he defendant is required to provide complete information regarding not only the offense

---

[7]  Petitioner states in his unsworn declaration (CV Dkt. 9, p. 5) that he believes counsel used a "damaging strategy" in persuading Petitioner to plead guilty.  As discussed in ground three, *supra*, Petitioner presents no evidence that counsel "persuaded" Petitioner to enter a plea.  The record belies this contention.  Moreover, to the extent that Petitioner challenges counsel's strategy, he cannot obtain relief.  A defendant's disagreement with counsel's tactics or strategy will not support a claim of ineffective assistance of counsel.  *Rogers v. Zant*, 13 F.3d at 386.

of conviction, but also any relevant conduct, including disclosure of information regarding the participation of other people in the offense.'" *United States v. Henderson*, 307 Fed. Appx. 970 (6th Cir. 2009) (citations omitted).

After Petitioner testified at the sentencing hearing, counsel attempted, albeit unsuccessfully, to garner a safety valve reduction for Petitioner despite Petitioner's refutation of his involvement in the offenses. The record does not show and Petitioner does not allege that he took any affirmative action to truthfully provide the Government any information regarding the offenses either before or after entering his guilty plea. Petitioner's argument that counsel's "unorthodox methods" during the sentencing hearing resulted in Petitioner's losing the opportunity to earn a safety valve reduction offers no support for his claim. In his unsworn declaration, Petitioner continues to maintain that he is not guilty of conspiring to transport the cocaine found in the submersible. Petitioner presents no evidence of entitlement to a safety valve reduction and fails to establish that given the opportunity, he would have offered truthful information about the offenses. Petitioner fails to establish either deficient performance by counsel or resulting prejudice. This claim of ineffective assistance warrants no relief. *See Strickland v. Washington*, 466 U.S. at 691-92.

### Evidentiary hearing

This case warrants no evidentiary hearing because "it plainly appears from the face of the motion and any annexed exhibits and the prior proceedings in the case that the movant is not entitled to relief." *Broadwater v. United States*, 292 F.3d 1302, 1303 (11th Cir. 2003).

24

## CERTIFICATE OF APPEALABILITY AND
## LEAVE TO APPEAL IN FORMA PAUPERIS DENIED

IT IS FURTHER ORDERED that Petitioner is not entitled to a certificate of appealability. A prisoner seeking a motion to vacate has no absolute entitlement to appeal a district court's denial of his motion. 28 U.S.C. § 2253(c)(1). Rather, a district court must first issue a certificate of appealability (COA). *Id.* "A [COA] may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." *Id.* at § 2253(c)(2). To make such a showing, Petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," *Tennard v. Dretke*, 542 U.S. 274, 282 (2004) (*quoting Slack v. McDaniel*, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further.'" *Miller-El v. Cockrell*, 537 U.S. 322, 335-36 (2003) (*quoting Barefoot v. Estelle*, 463 U.S. 880, 893 n. 4 (1983)). Petitioner has not made the requisite showing in these circumstances. Finally, because Petitioner is not entitled to a certificate of appealability, he is not entitled to appeal in forma pauperis.

Accordingly, it is **ORDERED AND ADJUDGED** that Petitioner's Motion to Vacate, Set Aside or Correct Sentence Pursuant to 28 U.S.C. § 2255 (CV Dkt. 1) is DENIED. The clerk is directed to enter judgment against Petitioner and to close this case.

**DONE AND ORDERED** in chambers this 2nd day of June, 2010.

**JAMES D. WHITTEMORE**
**United States District Judge**

Copies to:
Petitioner, *pro se*
Counsel of record